IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GONZALEZ-GARCIA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID GONZALEZ-GARCIA, APPELLANT.

Filed January 3, 2023.  No. A-22-062.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

David Gonzalez-Garcia, pro se.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

David Gonzalez-Garcia appeals the Douglas County District Court's denial of his motion for postconviction relief without an evidentiary hearing. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

Following a jury trial, Gonzalez-Garcia was convicted of first degree sexual assault of a child and was sentenced to 60 to 80 years' imprisonment with credit for 421 days served. On direct appeal, Gonzalez-Garcia, who was represented by different counsel than had represented him during trial and sentencing, assigned as error that the district court erred in admitting a note written by the victim, in admitting stick figure drawings into evidence, that there was insufficient evidence to support his conviction, and that the sentence imposed was excessive. *State v. Gonzalez-Garcia*, No. A-20-099, 2020 WL 6878791 (Neb. App. Nov. 24, 2020). This court affirmed Garcia's

- 1 -

conviction and sentence but remanded the cause to the district court with directions to modify the written sentencing order to reflect the oral pronouncement of sentence. *Id.*

Gonzalez-Garcia timely filed a motion for postconviction relief alleging that appellate counsel was ineffective for failing to assign as error trial counsel's failure to strike a juror on the ground that she was not a resident of Douglas County; in stipulating that law enforcement maintained a continuous chain of custody regarding DNA evidence; and failing to object to DNA evidence based upon the State's failure to maintain a complete and continuous chain of custody. Gonzalez-Garcia further alleged that, had appellate counsel raised these issues on direct appeal, he "would have been granted a new trial."

The district court denied Gonzalez-Garcia's motion for postconviction relief without an evidentiary hearing finding that Gonzalez-Garcia's general allegation that "had appellate counsel assigned this as error, appellate counsel would have secured a new trial" failed to allege sufficient facts to establish he was prejudiced by counsel's alleged ineffective assistance. The court noted that Gonzalez-Garcia's motion "fail[ed] to allege how striking the juror or calling the law enforcement officer relating to chain of custody would have changed the outcome of the trial." Gonzalez-Garcia has timely appealed to this court.

## ASSIGNMENT OF ERROR

Gonzalez-Garcia contends that the district court abused its discretion in denying his motion for postconviction relief without an evidentiary hearing on his claims of ineffective assistance of appellate counsel.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

## ANALYSIS

Before reaching the merits of the appeal, we briefly discuss the standard for motions for postconviction relief.

Under the Nebraska Postconviction Act, a prisoner in custody may file a motion for relief on the ground that there was a denial or infringement of the prisoner's constitutional rights that would render the judgment void or voidable. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020). Postconviction relief is a very narrow category of relief. *Id.* A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *Id.*

In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief. *Id.* In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution. *Id.* In the absence of alleged

facts that would render the judgment void or voidable, the proper course is to overrule a motion for postconviction relief without an evidentiary hearing. *Id.* The appellant in a postconviction proceeding has the burden of alleging and proving that the claimed error is prejudicial. *State v. Harris*, 274 Neb. 40, 735 N.W.2d 774 (2007).

To establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with Strickland, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Huff*, 25 Neb. App. 219, 904 N.W.2d 281 (2017). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To show prejudice under the prejudice component of the Strickland test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *Id.*

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id.*

Here, Gonzalez-Garcia argues that the district court erred in denying his motion for postconviction relief without an evidentiary hearing on his claims of ineffective assistance of appellate counsel. He asserts that his direct appeal counsel was ineffective for failing to assign as error trial counsel's ineffectiveness in (1) failing to strike a juror on the grounds that she was not a Douglas County resident, (2) entering into a stipulation that a continuous chain of custody was maintained by law enforcement related to DNA evidence, and (3) failing to object to DNA evidence based on the State's failure to maintain a chain of custody. We address each of these arguments independently.

JUROR ISSUE

Gonzalez-Garcia first assigns that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in failing to strike a juror on the grounds that the juror was not a resident of Douglas County. He asserts that, had appellate counsel assigned this as an ineffective assistance of counsel claim during his direct appeal, he would have been granted a new trial.

The record shows that during voir dire of the jury prior to trial, a juror informed the court that

> . . . my residence I believe as I looked last night, I looked it up and I might be in Sarpy County versus Douglas. So, I live in a house that I've had now at 126th and Giles . . . but the address that I'm listed on that brought me here is my parent's address, which is Douglas County . . .

Thereafter, the following colloquy occurred wherein counsel for Gonzalez-Garcia indicated having no issue with the juror's residence:

> THE COURT: Are you registered to vote at which address?
>
> [Prospective Juror]: At my parent's. So, which is Douglas.
>
> THE COURT: Okay.
>
> [Prospective Juror]: So, I don't know if it changes.
>
> THE COURT: I don't.
>
> [Prosecutor]: I don't.
>
> THE COURT: [Defense counsel], do you have any concerns?
>
> [Defense Counsel]: I do not have any concerns.

The juror was subsequently seated on the jury, and trial counsel did not move to strike the juror based on her residence.

In his motion for postconviction relief, Gonzalez-Garcia alleged that he had a constitutional right to have a "trial by a jury of the county where the crime was alleged to have been committed" and that the juror did not meet constitutional requirements to serve on the jury panel, and therefore, his trial counsel should have sought disqualification of the juror under Neb. Const. art. I, § 11 which provides:

> In all criminal prosecutions the accused shall have the right to appear and defend in person or by counsel, to demand the nature and cause of accusation, and to have a copy thereof; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

The district court denied Gonzalez-Garcia's motion for postconviction relief without an evidentiary hearing finding:

> [Gonzalez-Garcia], however, fails to allege how striking the juror . . . would have changed the outcome of the trial. In support of prejudice, all [Gonzalez-Garcia's] motion offers is that "For the reasons set forth in [3A] of the argument, had appellate counsel assigned this error, appellate counsel would have secured a new trial for [Gonzalez-Garcia]." . . . *State v. Sellers*, 858 N.W.2d 577, 587, 290 Neb. 18, 27-29 (2015) (emphasis added), is helpful in establishing how generic allegations, such as [Gonzalez-Garcia's], relating to prejudice are insufficient to warrant an evidentiary hearing:
>
> > "In [the appellant's] postconviction motion, he identified several activities that his trial counsel failed to undertake. These activities included filing a motion for discovery, hiring an independent investigator, reviewing the crime scene, consulting with a ballistics expert, and identifying and interviewing potential witnesses.
> >
> > "**However, [the appellant] failed to allege how undertaking the above activities would have produced a different outcome at trial. More specifically, he did not identify any exculpatory evidence that the activities would have procured.** As the district court observed, his allegations consisted solely of conclusory statements, such as, '"[I]f trial and/or appellate counsel would have investigated and hired an investigator to

fully investigate the case at bar, there surely would have been a different outcome in [the appellant's] trial."'

"Such conclusory allegations are insufficient to establish the prejudice prong of the Strickland test. . . ."

We agree with the district court's conclusion that an evidentiary hearing was not warranted based on the allegations contained within Gonzalez-Garcia's motion.

The appellant in a postconviction proceeding has the burden of alleging and proving that the claimed error is prejudicial. *State v. Harris*, 274 Neb. 40, 735 N.W.2d 774 (2007). Our caselaw makes clear that specific allegations of prejudice are required within the context of postconviction relief. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

In his motion for postconviction relief, Gonzalez-Garcia alleged:

For the reasons set forth in 3A of the argument, had appellate counsel assigned this error, [Gonzalez-Garcia] would have been granted a new trial as he was denied his constitutional right and privilege to have a competent and qualified juror under the laws of the State of Nebraska.

This allegation is conclusory in nature. A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) that the existence of jury misconduct and (2) that the misconduct was prejudicial to the extent that the defendant was denied a fair trial. *State v. Harris*, 264 Neb. 856, 652 N.W.2d 585 (2002). Gonzalez-Garcia claims his counsel was ineffective for failing to strike a juror on the grounds that she resided outside of Douglas County but failed to plead how this failure denied him a fair trial. To the extent that Gonzalez-Garcia is arguing that the failure of his trial counsel to move to strike a juror on the basis of her residency on this record constituted a constitutional violation and required a per se order of a new trial, we reject that contention. As the Nebraska Supreme Court recently noted in *State v. Madren*, 308 Neb. 443, 451, 954 N.W.2d 881, 888 (2021), "Both our court and the U.S. Supreme Court have repeatedly recognized that most constitutional errors can be harmless. Thus, under most circumstances, we have rejected a per se rule for irregularities or misconduct involving the sanctity of the jury."

Because Gonzalez-Garcia failed to plead how his trial counsel's failure to move to strike a juror on residency grounds prejudiced him, we find that the district court did not err in finding his pleading was not sufficient to grant him and evidentiary hearing. This assignment fails.

STIPULATION

Gonzalez-Garcia next assigns that his appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in stipulating that law enforcement maintained a continuous chain of custody related to DNA evidence admitted during the trial. The stipulation entered into by trial counsel and the State was received into evidence as exhibit 25 and set forth:

COMES NOW the undersigned parties and hereby stipulate to the following facts for the purposes of trial in the above-captioned matter:

1. The listed victim, E.M.'s, sexual assault kit was booked in Evidence by Omaha Police Officer Adam Jaworski as Item No. 2 on November 14, 2018 in relation to the

investigation of . . . Gonzalez-Garcia . . . for the purpose of secured safekeeping and forensic testing.

2. Item No. 1, [Gonzalez-Garcia's] buccal swab, and Item No. 2, E.M.'s sexual assault kit, were transported on November 15, 2018, by Omaha Police Detective Stephan Skaar from [the] Omaha Police Property Unit to the UNMC Human DNA Identification Laboratory and provided to Shannen Bishop, DNA analyst.

3. A complete and continuous chain of custody was maintained by law enforcement as it relates to Items 1 and 2.

In his motion for postconviction relief, Gonzalez-Garcia alleged that during the trial, a SANE nurse from the hospital testified that the sexual assault kit stayed with her until it is provided to law enforcement. Gonzalez-Garcia stated that a detective later testified that another officer would have retrieved the kit and transported it to be booked into property. However, Gonzalez-Garcia alleged that the officer who completed the transport was not called to testify and that this testimony was necessary in order to complete the chain of custody. He also argued that in the parties' first stipulation, the sexual assault kit was booked into property as item number 1 whereas in the second stipulation, the sexual assault kit was item number 2. He contends that without the transporting officer's testimony, it is unknown what condition the sexual assault kit was in or whether it was the same kit based on the labeling discrepancy between the stipulations. Gonzalez-Garcia alleged that, because the chain of custody was not properly demonstrated at trial, his counsel should not have agreed to the stipulation related to the chain of custody and that no deference should have been given to counsel based on trial strategy.

We note that Gonzalez-Garcia's claim that there was a labeling discrepancy regarding victim's sexual assault kit in the stipulation is refuted by the record. In the stipulation, received into evidence as exhibit 25, the victim's sexual assault kit is identified as item number 2:

1. *The listed victim, E.M.'s, sexual assault kit was booked in Evidence* by Omaha Police Officer Adam Jaworski *as Item No. 2* on November 14, 2018 in relation to the investigation of . . . Gonzalez-Garcia . . . for the purpose of secured safekeeping and forensic testing.

2. Item No. 1, [Gonzalez-Garcia's] buccal swab, and *Item No. 2, E.M.'s sexual assault kit*, were transported on November 15, 2018, by Omaha Police Detective Stephan Skaar from [the] Omaha Police Property Unit to the UNMC Human DNA Identification Laboratory and provided to Shannen Bishop, DNA analyst.

(Emphasis supplied.) We further note that, when the prosecutor read the stipulation into the record, she misspoke and stated that "1. The listed victim, EM's sexual assault kit was booked into evidence . . . as Item No. 1 [sic] . . ." The fact that the prosecutor misspoke when reading the stipulation into evidence did not alter the contents of the stipulation which had previously been agreed to by the State and Gonzalez-Garcia's trial counsel.

Further, similar to Gonzalez-Garcia's first assignment of error, the district court found that his motion for postconviction relief failed to sufficiently allege prejudice. Without pleading more, Gonzalez-Garcia made the same conclusory allegation that had appellate counsel assigned this as error on direct appeal, he would have been granted a new trial. But Gonzalez-Garcia failed to plead

how the stipulation resulted in prejudice to him. Although he claimed that his counsel failed to object to the State not calling a witness at trial to establish the proper chain of custody for DNA evidence, he never pled how the chain of custody of items one and two in the stipulation was compromised which resulted in prejudice to him because of his counsel's stipulation. Without specifically pleading facts which demonstrate that this stipulation undermined the outcome of his case, the district court did not err in denying Gonzalez-Garcia an evidentiary hearing on this issue. This claim fails.

## DNA EVIDENCE

Gonzalez-Garcia finally assigns that his appellate counsel was ineffective for failing to assign as error that trial counsel was ineffective for failing to object during the trial to the DNA evidence based on chain of custody. He contends that had appellate counsel asserted trial counsel's error in his direct appeal, he would have been granted a new trial on the basis of an incomplete chain of custody.

The district court found that Gonzalez-Garcia failed to allege prejudice in his motion for postconviction relief due the insufficiency of his general allegation that he would have been granted a new trial had appellate counsel assigned it as error. We agree. Gonzalez-Garcia's motion does not allege how trial counsel's alleged failure to object to the chain of custody resulted in prejudice. As we stated before, Gonzalez-Garcia failed to plead how the chain of custody associated with the DNA evidence was compromised, why his counsel was ineffective for agreeing to stipulate to the chain of custody, or why an objection to the State's offer of DNA evidence on chain of custody grounds would have been sustained. Because a district court may properly deny a motion for postconviction relief when the motion alleges only conclusions of fact or law, we find that the district court did not err in denying Gonzalez-Garcia's motion for postconviction relief without an evidentiary hearing. This assignment of error fails.

## CONCLUSION

Having considered and rejected Gonzalez-Garcia's assigned errors, we affirm the district court's denial of his motion for postconviction relief without an evidentiary hearing.

AFFIRMED.